UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DOROTHY BALABAN, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:06CV1268 CDP |
| LINCOLN COUNTY AMBULANCE DISTRICT, et al., | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Dorothy Balaban worked for the Lincoln County Ambulance District from 2002 until her termination in March of 2006. She alleges that she was fired in retaliation for exercising her First Amendment rights, specifically, for telling a reporter for the St. Louis Post-Dispatch that another employee had been disciplined because she objected to giving high raises to union members. Defendants seek summary judgment on a variety of grounds. I conclude that genuine disputes of material fact remain on the merits, and that defendants are not entitled to qualified immunity, so I will deny the motion for summary judgment. I will also deny the pending motion to require the reporter to reveal the names of other employees who told her they feared retaliation.

**Factual Background**

Plaintiff Dorothy Balaban began working as a billing clerk for defendant Lincoln County Ambulance District in 2002. She was terminated on March 28, 2006. The termination letter stated that she was being fired for "disruptive behavior and insubordinate conduct." She has sued the District and some of the board members who voted for her termination. She also names as a defendant James Holloway, the District's Chief of Operations, who recommended that she be fired.

Balaban alleges that she was terminated because she spoke out about the District's treatment of Mia Farmer, who had initially been her supervisor. Farmer had been placed on administrative leave in February of 2006. The reasons for this are disputed, but plaintiff has presented evidence that Farmer was first demoted and later placed on leave because she had opposed increased benefits and pay raises for union employees. Plaintiff's evidence is that Holloway and a majority of the board members have strong ties to the union and have worked to increase union pay and benefits. She asserts that Farmer had been responsible for improving the finances of the District, and that Farmer was opposed by the union because she attempted to hold the line on District spending.

Farmer provided information to a reporter with the St. Louis Post Dispatch,

Susan Weich, to the effect that she was being forced out by union-backed board members in retaliation for her objections to the raises and benefits. Balaban was contacted by Weich, and agreed to speak to her about Farmer. According to Weich, Balaban said that Farmer had gotten on the wrong side of the union and the paramedics because "[h]er first priority was the finances of the District" and that Farmer was concerned that "some of the requests of the union and the fire fighters were going to put the District in a bad financial situation." Balaban told Weich that "the union turned against [Farmer] and started taking action against her."[1] Balaban testified that she spoke to Weich about Farmer and expressed her belief as to why Farmer was being treated unfairly.

On March 19, 2006, Weich's article appeared in the St. Louis Post-Dispatch discussing Farmer's claims. Balaban was quoted in the story, and spoke of her belief that Farmer was attempting to protect the financial well-being of the District:

> [Board counsel] said the financial turnaround should be credited to the board. Dorothy Balaban, a medical billing clerk with the ambulance district, said Farmer had done the outstanding work.
>
> "Before she took over as the finance officer, we were running in the red all the time just to make ends meet," she said.

---

[1] Weich's deposition testimony was submitted in support of the motion to compel.

> Balaban stated that Farmer had been singled out for what amounted to compassionate decisions. Two months before Balaban had been with the district for a full year and was entitled to a week's vacation, her mother suffered a heart attack. Because her mother lived in Indiana, Balaban wanted to take time off to visit her. Farmer allowed her to take her vacation a week early.
>
> Balaban said, "They decided that was a breach of policy, even though I paid it back come July."

After Balaban spoke with Weich but before the story ran, Holloway drafted two memoranda discouraging employees from speaking to reporters and reminding them that they could be disciplined or fired for speaking about personnel issues.

On March 28, 2006, in a closed session board meeting, the board voted to discharge Balaban on Holloway's recommendation. Balaban's termination letter, signed by Holloway, cited "disruptive behavior and insubordinate conduct" as the reason for her termination. The District has a progressive discipline policy that provides for verbal counseling and written reprimands to precede termination. It is undisputed that Balaban was not given any warning before she was terminated, nor was she told what the disruptive and insubordinate behavior was.

The board members have given inconsistent and vague explanations about Balaban's allegedly insubordinate and disruptive behavior. Balaban had previously complained about not getting as high a raise as other employees, and some board members claimed these complaints were the insubordinate or

disruptive behavior, but others testified that Balaban was not insubordinate in this regard. Others referred to Balaban's allegedly improper copying of a fax with credit card information on it, to Balaban's complaints that Holloway and another employee took long lunch hours, and to Balaban's discussion of the "Mia Farmer issue." Holloway himself testified that he could not remember much of what was discussed, but several board members testified that Holloway had instigated the discussion and told them that Balaban had been insubordinate. Some board members said that Balaban had accused Holloway of having an affair with the co-worker he went to lunch with, but none testified that they themselves had actually heard Balaban make that accusation. Several of Balaban's co-workers testified that they never saw Balaban become disruptive, insubordinate, or disrespectful.

After Balaban was fired, a second article appeared in the Post-Dispatch reporting Balaban's termination. That article reported that Balaban was the only District employee who agreed to talk about the situation and that other employees said they feared retaliation if they spoke to the media. The identity of these other employees is the subject of the motion to compel.

## Discussion

**1.     Summary Judgment Standard**

The standards for summary judgment are well settled. In determining

whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

### 2. First Amendment Retaliation

To establish a prima facie case of First Amendment retaliation, Balaban must allege and prove that: (1) she engaged in an activity protected by the First Amendment, (2) the defendants took an adverse employment action against her, and (3) the protected conduct was a substantial or motivating factor in the defendants' decision to take the adverse employment action. Davison v. City of Minneapolis, 490 F.3d 648, 654 (8th Cir. 2007) (citing Mt. Healthy City School

Dist. v. Doyle, 429 U.S. 274, 287 (1977)). Once Balaban meets her burden, the burden shifts to defendants to "demonstrate that the same employment action would have been taken in the absence of the protected activity." Id.

Determining whether an employee's speech is protected by the First Amendment usually requires a two-step analysis. See Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000). First, the court must determine whether the employee's speech can be "fairly characterized as constituting speech on a matter of public concern." Connick v. Myers, 461 U.S. 138, 146 (1983). Next, if the speech addresses a matter of public concern, the court must balance the employee's interests, as a citizen, "in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Educ., 391 U.S. 563, 568 (1968). Both of these issues are questions of law, but any underlying factual disputes must be submitted to the jury. Belk, 228 F.3d at 878.

"Matters of public concern include matters of political, social, and other concern to the community." Id. Under Connick, in determining whether speech relates to a matter of public concern, I must examine "the content, form, and context of the speech as revealed by the entire record." 461 U.S. at 147-48. The Eighth Circuit has repeatedly stated that speech concerning the misuse of public

funds is speech on a matter of public concern. See de Llano v. Berglund, 282 F.3d 1031, 1036 (8th Cir. 2002); Belk, 228 F.3d at 878; Kincade v. City of Blue Springs, 64 F.3d 389, 396 (8th Cir. 1995); Casey v. City of Cabool, 12 F.3d 799, 803 (8th Cir. 1993).

> When the employee's speech includes matters of both public concern and personal interest, [the court] must analyze the content, form, and context of the speech to determine whether the speaker was acting primarily as a concerned citizen or as an employee. If the speech was mostly intended to further the employee's private interests rather than to raise issues of public concern, her speech is not protected, even if the public might have an interest in the topic of her speech.

Bailey v. Depart. of Elementary and Secondary Educ., 451 F.3d 514, 518 (8th Cir. 2006); accord Tuttle v. Missouri Department of Agriculture, 172 F.3d 1025, 1033-1034 (8th Cir. 1999).

Defendants contend that Balaban's speech did not refer to the use of public funds, but instead, merely referenced internal personnel matters. The record as a whole, however, shows that Balaban's speech to Weich concerned the use of public funds. Balaban told Weich that the board, and the union, were retaliating against Farmer for her opposition to the union's financial requests; she said that Farmer was disciplined because she placed the finances of the district over the desires of the union. The article puts Balaban's speech in context, and although the quotes attributed to Balaban do refer to personnel concerns, the context is

Farmer's allegation that public funds were being misused through excessive compensation, and Balaban's agreement with that concern. While Balaban may have also been upset about her own compensation, there is no evidence that she spoke to the reporter about that concern. The record shows that Balaban's statements to the reporter were about a matter of public concern, and were not made to further her own pecuniary interests.

Under the Pickering balancing test the court would normally determine whether Balaban's interest in her speech is outweighed by the governmental employer's interest in promoting the efficiency and effectiveness of the services it performs. 391 U.S. at 568. Because the defendants have not produced any evidence that Balaban's speech had any adverse effect on the efficiency of the District's operations, however, I need not reach the defendants' Pickering arguments. See Sexton v. Martin, 210 F.3d 905, 912-13 (8th Cir. 2000) ("Before the Court commences the Pickering balancing test, however, it is critical to determine whether the defendant has produced sufficient evidence that the speech had an adverse effect on the efficiency of the employer's operations."). The defendants must do more than make conclusory statements that there was a disruption; they must raise specific facts in support of this claim. Id; see also Burnham v. Ianni, 119 F.3d 668, 680 (8th Cir. 1997) (noting that the Eighth

Circuit does not grant any deference to a government supervisor's bald assertions of harm based on "conclusory hearsay and rank speculation"). "A government employer must make a substantial showing that the speech is, in fact, disruptive before the speech may be punished." Sexton, 210 F.3d at 913. Defendants have not presented any evidence that demonstrates any kind of disruption as a result of Balaban's speech. None of the factual allegations support this contention. Further, while defendants' initial memorandum in support of summary judgment argues that they are entitled to summary judgment under Pickering, their reply brief appears to abandon this argument. Whether defendants have abandoned the argument or not, I need not reach the issue of Pickering balancing because defendants have presented no evidence that Balaban's speech disrupted the workplace.

Because the parties agree that Balaban suffered an adverse employment action, the next question is whether Balaban's speech was a substantial or motivating factor in the defendants' decision to terminate her. Defendants argue that Balaban's only evidence of a causal connection between her termination and her speech is the temporal proximity and that this is not enough. Again, I disagree. The Eighth Circuit has recently stated that "an adverse action that occurs on the heels of a protected activity is significant evidence that what happened was

more than just coincidence," and that such evidence "should not be regarded as coincidental on a motion for summary judgment." Davison, 490 F.3d at 657 (internal quotations omitted). Here there is more than a mere temporal connection, and Balaban has presented evidence that creates a genuine factual dispute on this point.

Balaban's evidence shows that after she spoke to the reporter, Holloway created two memoranda discouraging employees from speaking with the media. Defendants admit in their reply brief that board members were nonplused about the articles. Board member Cathy Haase has indicated that she voted for Balaban's termination not because she believed Balaban was insubordinate but because she believed that Balaban would be better off with employment somewhere else. Balaban asked Haase if she should be looking for a job because of the comments in the paper, and Haase replied that she would do so if it was her. Additionally, the evidence shows that the defendants did not follow the District's progressive discipline policy. Balaban was never warned about insubordinate or disruptive behavior before she was terminated. Additionally, "a finder of fact may infer an improper motive from evidence of the falseness of an employer's proffered justification for an adverse action." Hudson v. Norris, 227 F.3d 1047, 1051-52 (8th Cir. 2000) (citing Reeves v. Sanderson Plumbing Products, Inc., 530

more than just coincidence," and that such evidence "should not be regarded as coincidental on a motion for summary judgment." Davison, 490 F.3d at 657 (internal quotations omitted). Here there is more than a mere temporal connection, and Balaban has presented evidence that creates a genuine factual dispute on this point.

Balaban's evidence shows that after she spoke to the reporter, Holloway created two memoranda discouraging employees from speaking with the media. Defendants admit in their reply brief that board members were nonplused about the articles. Board member Cathy Haase has indicated that she voted for Balaban's termination not because she believed Balaban was insubordinate but because she believed that Balaban would be better off with employment somewhere else. Balaban asked Haase if she should be looking for a job because of the comments in the paper, and Haase replied that she would do so if it was her. Additionally, the evidence shows that the defendants did not follow the District's progressive discipline policy. Balaban was never warned about insubordinate or disruptive behavior before she was terminated. Additionally, "a finder of fact may infer an improper motive from evidence of the falseness of an employer's proffered justification for an adverse action." Hudson v. Norris, 227 F.3d 1047, 1051-52 (8th Cir. 2000) (citing Reeves v. Sanderson Plumbing Products, Inc., 530

more than just coincidence," and that such evidence "should not be regarded as coincidental on a motion for summary judgment." Davison, 490 F.3d at 657 (internal quotations omitted). Here there is more than a mere temporal connection, and Balaban has presented evidence that creates a genuine factual dispute on this point.

Balaban's evidence shows that after she spoke to the reporter, Holloway created two memoranda discouraging employees from speaking with the media. Defendants admit in their reply brief that board members were nonplused about the articles. Board member Cathy Haase has indicated that she voted for Balaban's termination not because she believed Balaban was insubordinate but because she believed that Balaban would be better off with employment somewhere else. Balaban asked Haase if she should be looking for a job because of the comments in the paper, and Haase replied that she would do so if it was her. Additionally, the evidence shows that the defendants did not follow the District's progressive discipline policy. Balaban was never warned about insubordinate or disruptive behavior before she was terminated. Additionally, "a finder of fact may infer an improper motive from evidence of the falseness of an employer's proffered justification for an adverse action." Hudson v. Norris, 227 F.3d 1047, 1051-52 (8th Cir. 2000) (citing Reeves v. Sanderson Plumbing Products, Inc., 530

U.S. 113 (2000)). Balaban has presented sufficient evidence from which a factfinder could conclude that the reference to insubordinate and disruptive behavior was false.

As I noted above, evidence of the falsity of the reasons for Balaban's termination goes not only to establishing a causal connection, but also to establishing that the justification given was pretextual. Hudson, 227 F.3d at 1052. Defendants argue that they are entitled to summary judgment through the affirmative defense of inevitability, but significant questions of fact exist as to the truthfulness of defendants' claims. While it is possible that defendants terminated Balaban because of disruptive or insubordinate behavior and that they would have done so regardless of her protected speech, it is also possible that this claim is merely a pretext.

### 3. Qualified Immunity

All of the defendants argue that they are entitled to summary judgment in their individual capacities on grounds of qualified immunity. The doctrine of qualified immunity protects state actors from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Defendants would be entitled to qualified immunity if (1) Balaban is

asserting a violation of a constitutional or statutory right, and (2) that right was not clearly established when Balaban was discharged. Belk, 228 F.3d at 882. Ultimately, the question is whether "a reasonably competent public official should know the law governing his conduct." Id. First Amendment protection for public employees is clearly established law. Id.

Defendants argue that the issue is whether a reasonable public official would have known that Balaban's speech refered to a matter of public concern. In their initial brief, they argued that under Pickering qualified immunity is always appropriate. They appear to have abandoned that argument in their reply brief – presumably in recognition, as discussed above, that Pickering has no application here – but to the extent they have not abandoned that argument, it fails for the reasons stated in Belk, 228 F.3d at 882, Burnham, 119 F.3d at 679, and Kincade, 64 F.3d at 398-99. Once the Pickering argument is set aside, defendants' only argument for qualified immunity is that because their lawyers have *some* basis for arguing that Balaban's statements were not made in the public interest, they are entitled to qualified immunity. That is not the law.

As discussed above, the Eighth Circuit has repeatedly held that speech concerning the use of public funds is speech on a matter of public interest. The Eighth Circuit cases recognizing that speech about misuse of public funds was

protected date back more than a decade before this case arose.² Under Balaban's evidence, any reasonable public official should have known that Balaban's speech was protected, because Balaban spoke about retaliation for opposition to misuse of public funds. Placed in the context of the article and the Farmer dispute, which is the proper method for viewing Balaban's comments under the Connick analysis, a reasonable public official would have recognized that retaliating for those comments would violate the law. Although there remains a factual dispute regarding whether defendants actually fired Balaban in retaliation for the remarks, there is no reasonable dispute about qualified immunity. *If* defendants retaliated against Balaban for her statements to the press, they violated her clearly established First Amendment rights. As a result, defendants are not entitled to qualified immunity.

### 4. Defendant Holloway's Individual Liability

Defendant Holloway argues that he cannot be held liable under § 1983 because, as a non-board member, he did not vote on Balaban's termination. Holloway attempts to compare his involvement in this case with the situation in

---

²Casey, 12 F.3d 799, was decided in 1993 and involved a fire chief who complained about the city clerk's use of city resources for home repairs; Kincade, 64 F.3d 389, was decided in 1995 and involved a city engineer who complained about contracts awarded on a dam project; Belk, 228 F.3d 872, which involved a city employee's statement that an employee was receiving excess compensation, was decided in 2000.

Thomason v. SCAN Volunteer Serv., 85 F.3d 1365 (8th Cir. 1996). In that case, the Eighth Circuit affirmed the district court's dismissal of claims against the director of SCAN because there was no allegation that he was personally or directly involved in the violation of the plaintiffs' rights. Id. at 1370.

The allegations in Thomason were significantly different from the allegations against Holloway here. Balaban's evidence shows that Holloway acted in retaliation for her comments to Weich when he went to the closed session of the Board and secured her termination. She has also alleged that he was the individual who actually signed her termination letter. Liability has been imposed in a First Amendment retaliation case with significantly similar facts. In Darnell v. Ford, 903 F.2d 556 (8th Cir. 1990), a supervisor was held liable for recommending discipline in retaliation for an inferior's exercise of his First Amendment rights. As in Darnell, Holloway's recommendation to the board was made in secret at a closed meeting, and Balaban did not have any opportunity to challenge Holloway's statements. See id. at 561. A recommendation that leads to an adverse employment action may be sufficient to establish liability under § 1983. Id. at 562. In Darnell, the court noted that "causation can be established by direct personal participation in the deprivation or by participation setting in motion a series of acts by others which the actor knows or reasonably should know would

cause others to inflict constitutional injuries on third parties." Id. (citing Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).

### 5. The Motion to Compel

Defendants seek an order compelling reporter Weich to reveal the identities of other employees who told her they would not comment for fear of retaliation. I will deny the motion to compel. Any testimony on this issue would be inadmissible hearsay. Although plaintiff argues that Weich's testimony would be admissible as an exception to the hearsay rule, I disagree. More importantly, it is completely irrelevant to the issue in this case, which is whether defendants retaliated against plaintiff.

The briefs indicate that at least some of the other employees have been deposed and deny telling the reporter they feared retaliation. Weich, however, reported that some did. Perhaps the employees are lying about their conversations with Weich. Perhaps Weich got it wrong in her story. Apparently the parties want to have a mini-trial about who among these non-parties is telling the truth about something that is, at best, of marginal relevance. Whether other employees feared retaliation does not prove whether Balaban was retaliated against. It would be a

great waste of time and would confuse the issues to explore this further.[3]

## Conclusion

Defendants are not entitled to summary judgment as a matter of law because issues of material fact exist on the crucial question of why Balaban was fired. Balaban's speech was protected by the First Amendment as it addressed a matter of public concern. The constitutional right of a public employee not to be disciplined for speech addressing a matter of public concern was well-established at the time Balaban was fired, so defendants are not entitled to qualified immunity. Finally, Holloway has not shown that he is entitled to summary judgment on the claims against him.

This case was previously set for trial on the two-week docket beginning on January 7, 2008. Because of other matters on my schedule, I will reach the case for trial on the second Monday of that docket, **January 14, 2008, at 8:30 a.m.** As the case will not be reached until the second week of the docket, I will extend the deadlines for the parties' filing of their pretrial submissions.

Accordingly,

---

[3] If I were to apply the qualified privilege analysis that has been adopted by some courts, I would most likely deny the motion. See Richardson v. Sugg, 220 F.R.D. 343, 346-348 (E.D. Ark. 2004) (summarizing the law and noting that the party seeking the information has to show that the information is highly material and relevant).

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [#24] is denied.

**IT IS FURTHER ORDERED** that defendant Lincoln County Ambulance District's motion to compel Susan Weich to answer questions at deposition [#17] is denied.

**IT IS FURTHER ORDERED** that this case will be reached for trial on **Monday, January 14, 2008 at 8:30 a.m. This is a date certain.** The parties' pretrial submissions will now be due no later than **Friday, December 21, 2007**, and their objections, supplemental designations, and motions in limine will now be due no later than **Friday, January 4, 2008**.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 26th day of November, 2007.